H. T. JACKSON, ROY BUMPASS, G. C. SMITH, AND SANFORD SMITH, APPELLANTS V. GUILFORD COUNTY BOARD OF ADJUSTMENT UNDER THE ZONING ORDINANCE OF GUILFORD COUNTY, DR. ROBERT M. FOX, CHAIRMAN; S. R. STAFFORD, PAUL PHIPPS, ORVIE HAYWORTH, HOWARD S. WAYNICK, REGULAR MEMBERS; WILLIAM H. LANIER, R. MACK PEOPLES, ALTERNATE MEMBERS; AND LESTER O. JONES, APPELLEES

No. 6

(Filed 12 March 1969)

**1. Municipal Corporations § 30;  Injunctions § 7;  Nuisance § 6— use of land — rights of adjoining landowners — standing to sue**

   The mere fact that one's proposed lawful use of his own land will diminish the value of adjoining or nearby lands of another does not give to such other person a standing to maintain an action, or other legal proceeding, to prevent such use; but where the proposed use is unlawful, the owner of adjoining or nearby lands who will sustain special damage from the proposed use through a reduction in the value of his own property does have a standing to maintain such proceeding.

**2. Municipal Corporations § 31—  exercise of zoning powers — role of courts**

   The courts, at the suit of a landowner threatened with injury, may not compel a city or other governmental unit to exercise a zoning authority

conferred upon it by statute or prevent it from amending or repealing a valid zoning ordinance previously adopted by it.

**3. Municipal Corporations § 30— zoning ordinance — invalid amendment — remedy of adjoining landowner**

If purported zoning ordinance amendment permitting a use of property forbidden by the original ordinance is itself invalid, the prohibition upon the use remains in effect; the owner of other land who will be specially damaged by such proposed use has standing to maintain a proceeding in the courts to prevent it.

**4. Municipal Corporations § 30— zoning — board of adjustment — effect of unlawful order**

Order of a zoning board of adjustment purporting to grant an exception to a valid zoning ordinance, which order is in excess of the authority of such board, leaves the proposed use within the prohibition of the ordinance and, therefore, unlawful.

**5. Counties § 5— county zoning — board of adjustment — order granting special exception**

Landowners *are held* proper parties to attack validity of an order of a county zoning board of adjustment granting special exception for a mobile home park in an A-1 Agricultural District, where basis of the landowners's contention is that the county zoning ordinance forbids the proposed use without a properly granted exception and the board has no authority to grant the exception.

**6. Counties § 5— county zoning — derivation of authority**

Counties have no inherent authority to enact zoning ordinances but derive their authority from Article 20B, Ch. 153, of the General Statutes, which expressly confers such power upon the boards of county commissioners.

**7. Constitutional Law § 8; Municipal Corporations § 29; Counties § 2— delegation of legislative powers — municipalities — counties**

The authority of the General Assembly to delegate to municipal corporations the power to legislate concerning local problems, such as zoning, is an exception to the general rule that legislative powers, vested in the General Assembly by Art. II, § 1, of the N. C. Constitution, may not be delegated by it; this exception extends, as to other types of local matters, to a like delegation to counties and other units established by the General Assembly for local government.

**8. Counties § 5— county zoning — delegation of powers to county commissioners**

Notwithstanding Art. II, § 1, of the N. C. Constitution, the General Assembly may confer upon county boards of commissioners power to adopt zoning ordinances otherwise valid.

**9. Counties § 5— county zoning — delegation of zoning power to board of adjustment**

A county zoning ordinance may not delegate zoning powers to the county board of adjustment. G.S. 153-266.10, G.S. 153-266.11, G.S. 153-266.17.

**10. Counties § 5— county zoning ordinance — delegation of administrative powers**

Provision of county zoning ordinance that the board of adjustment is to grant a permit to establish a mobile home park in an A-1 Agricultural District "in accordance with the principles, conditions, safeguards and procedures specified in this ordinance" or is to deny the permit "when not in harmony with the purpose and intent of this ordinance" relates to matters of administration and is not invalid as a delegation of the legislative power to change or add to the law as fixed in the ordinance.

**11. Counties § 5— county zoning ordinance — unlawful delegation of power to board of adjustment**

Provision of county zoning ordinance which requires board of adjustment to deny a permit for the establishment of a mobile home park in an A-1 Agricultural District unless it finds that "the granting of the special exception will not adversely affect the public interest" is invalid under statute providing that county zoning ordinance may authorize board of adjustment to permit special exceptions to the zoning regulations in accordance with the principles, conditions, and safeguards specified in the ordinance. G.S. 153-266.17.

**12. Statutes § 5— rule of construction**

When a statute or ordinance prescribes two or more prerequisites to official action, the presumption is that none of them is a mere repetition of the others.

**13. Statutes § 5— rule of construction**

All parts of the same statute dealing with the same subject are to be construed together as a whole, and every part thereof must be given effect if this can be done by any fair or reasonable intendment.

**14. Statutes § 4— rule of construction — separability of valid from invalid provisions**

If the valid provisions of a statute or ordinance are separable from invalid provisions therein, so that if the invalid provisions be stricken the remainder can stand alone, the valid portions will be given full effect if that was the legislative intent.

**15. Statutes § 4— rule of construction — legislative intent — giving effect to valid provision of statute**

When the statute or ordinance could be given effect had the invalid portion never been included, it will be given such effect if it is apparent that the legislative body, had it known of the invalidity of the one portion, would have enacted the remainder alone.

APPEAL from the Court of Appeals.

A comprehensive zoning ordinance of Guilford County divides all of the county, outside the zoning jurisdictions of incorporated municipalities, into nine districts, including the A-1 Agricultural District, as to which the ordinance provides:

> Section 1-3: "A-1 Agricultural District. Primarily for agricultural purposes with provisions for single family residences and mobile homes and two family residences on large lots."

> Section 5-1: "The A-1 Agricultural District is established as a district in which the principal use of land is for general agricultural purposes. In promoting the general purposes of this ordinance the specific intent of this Section is: to encourage the continued use of land for agricultural purposes; to prohibit scattered commercial and industrial uses of land; to prohibit any other use which would interfere with an integrated and efficient development of the land for more intensive use as the county population increases; and to discourage any use, which because of its character or size, would create unusual requirements and costs for providing public services, such as law enforcement, fire protection, water supply and sewage disposal before such services are generally needed."

Lester O. Jones applied to the County Board of Adjustment for a special exception permitting him to establish a mobile home park with capacity for 25 mobile homes upon land owned by him in the A-1 Agricultural District. The board fixed a time for a hearing upon the application and gave notice thereof. The appellants and others appeared before the board at such hearing and testified in opposition to the application, they being the owners of residences in the district and contending that the establishment of the proposed mobile home park would adversely affect the values of their properties and would injuriously affect the further development of the area as a residential community. The board, accompanied by the parties, viewed the proposed site and the surrounding area. It then issued its order containing its findings of fact and granting the special exception applied for, subject to certain conditions not presently material.

The only provisions in the ordinance specifically referring to the establishment of a mobile home park anywhere in the county are in Sections 3-10 and Article IV. Section 3-10 provides:

> "A mobile home park may be established as a special exception in certain districts as prescribed by Article IV of this ordinance subject to the following conditions:" (Then follows a series of detailed specifications concerning the site plan, dimensions of the park and of each mobile home space therein, driveways, parking spaces, recreation space, and the like, plus a provision for any other reasonable requirements, necessary to

accomplish the purpose of the ordinance, which the Board of Adjustment may specify.)

Article IV of the ordinance is a detailed tabulation of permitted uses of land within the several districts. It provides that within certain districts, including the A-1 Agricultural District, permitted uses include:

> "Mobile home parks *as a special exception,* subject to the provisions of Section 6-13B and operated in accordance with the provisions of Section 3-10 and the Guilford County Board of Health's regulations relating to the establishment and operation of mobile home parks." (Emphasis added.)

Section 6-13B authorizes the Board of Adjustment to grant special exceptions "in accordance with the principles, conditions, safeguards, and procedures specified in this ordinance, or to deny special exceptions when not in harmony with the purpose and intent of this ordinance," but then provides that such an exception shall not be granted by the board unless a written application therefor is submitted, a public hearing is had following a notice thereof and "the Board shall make a finding that it is authorized and empowered to grant a special exception under the section of this ordinance described in the application *and that the granting of the special exception will not adversely affect the public interest."* (Emphasis added.)

Section 7-1 of the ordinance provides:

> "In their interpretation and application the provisions of this Ordinance shall be held to be the *minimum requirements* for the promotion of the public safety, health, convenience, prosperity, and general welfare. * * * All variances and special exceptions granted by the Board of Adjustment and all terms, conditions, and obligations imposed by the Board of Adjustment shall be binding as though explicitly provided in this Ordinance." (Emphasis added.)

Section 7-2 of the ordinance provides:

> "Should any section, sentence, clause or phrase of this Ordinance be held invalid or unconstitutional by the Courts, such decision shall not affect the validity of the remaining portions of this Ordinance."

Section 1-1 of the ordinance states its over-all purpose as follows:

> "The zoning regulations and districts as herein set forth have been made in accordance with a comprehensive plan and are

designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; and to facilitate the adequate provisions of transportation, water, sewerage, schools, parks, and other public requirements. These regulations have been made with reasonable consideration, among other things, as to the character of each district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the county. Further, these regulations have been made with reasonable consideration for the expansion and development of each municipality within the county so as to provide for their orderly growth and development."

The order of the Board of Adjustment granting the special exception applied for was reviewed by the Superior Court of Guilford County upon certiorari. Lupton, J., remanded the matter to the board for the reason that in its order it had not made a finding of fact that the granting of the special exception would not adversely affect the public interest, and directed the board to hold a further hearing and to make a finding of fact upon that question.

Thereupon, the board held a further hearing, at which the applicant and the appellants introduced further evidence. The board then issued its second order, finding as a fact that "the granting of the special exception to permit Lester O. Jones to construct a mobile home park as applied for will not adversely affect the public interest" and granting the special exception.

The matter was again reviewed by the Superior Court of Guilford County upon certiorari. Crissman, J., entered judgment overruling all of the appellants' exceptions to the order of the board and affirming its order. This judgment of the superior court recites that when the matter came on for hearing in that court the appellants asserted that the order of the board should be vacated for three reasons: (1) There was not sufficient evidence before the board to sustain its finding that to grant the special exception will not adversely affect the public interest; (2) the board put upon the appellants the burden of showing that the public interest would be adversely affected; and (3) the delegation to the board of authority to grant special exceptions is "an unlawful and unconstitutional delegation of power and authority to the Board of Adjustment."

From the judgment of Crissman, J., the appellants appealed to

the Court of Appeals, assigning as error, among others, the holding that the delegation to the board of authority to grant special exceptions was constitutional and lawful.

The Court of Appeals affirmed the judgment of the superior court, its opinion being reported in 2 N.C. App. 408. The appellants thereupon appealed to this Court, asserting that the provision of the ordinance purporting to confer upon the board the authority to grant a special exception is a delegation of legislative power in violation of Article II, Section 1, of the Constitution of North Carolina.

*Cannon, Wolfe, Coggin & Taylor for plaintiff appellants.*

*J. Howard Coble and David I. Smith for defendant appellees.*

LAKE, J.

[1]  The mere fact that one's proposed lawful use of his own land will diminish the value of adjoining or nearby lands of another does not give to such other person a standing to maintain an action, or other legal proceeding, to prevent such use. *Harrington & Co. v. Renner,* 236 N.C. 321, 72 S.E. 2d 838; 1 Am. Jur. 2d, Adjoining Landowners, § 2. If, however, the proposed use is unlawful, as where it is prohibited by a valid zoning ordinance, the owner of adjoining or nearby lands, who will sustain special damage from the proposed use through a reduction in the value of his own property, does have a standing to maintain such proceeding. *Zopfi v. City of Wilmington,* 273 N.C. 430, 160 S.E. 2d 325; *Harrington & Co. v. Renner, supra.*

[2, 3]  The courts, at the suit of a landowner so threatened with injury, may not compel a city or other governmental unit to exercise a zoning authority conferred upon it by statute, or prevent it from amending or repealing a valid zoning ordinance previously adopted by it. *Zopfi v. City of Wilmington, supra; In Re Markham,* 259 N.C. 566, 131 S.E. 2d 329; *McKinney v. High Point,* 239 N.C. 232, 79 S.E. 2d 730. If, however, that which purports to be an amendment permitting a use of property forbidden by the original ordinance is, itself, invalid, the prohibition upon the use remains in effect. In that event, the owner of other land, who will be specially damaged by such proposed use, has standing to maintain a proceeding in the courts to prevent it. See: *Zopfi v. City of Wilmington, supra; Crozier v. County Commissioners of Prince George's County,* 202 Md. 501, 97 A. 2d 296, 37 A.L.R. 2d 1137; Annot., 37 A.L.R. 2d 1143.

[4, 5]  Similarly, the order of a board of adjustment purporting

to grant an exception to a valid zoning ordinance, which order is in excess of the authority of such board, leaves the proposed use within the prohibition of the ordinance and, therefore, unlawful. Thus, the appellants are proper parties to attack in this proceeding the validity of the order of the Board of Adjustment. Their contention is that the county zoning ordinance forbids the proposed use of the Jones land without a properly granted exception and the Board of Adjustment has no authority to grant the exception.

[6]   Counties have no inherent authority to enact zoning ordinances. In *Harrington & Co. v. Renner, supra,* this Court conceded, for the purpose of the question then before it, that the General Assembly may, under the Constitution of North Carolina, empower a county board of commissioners to enact ordinances providing for zoning districts in the rural areas of the county, but expressly stated it did not decide that question since, at that time, the General Assembly had not undertaken to do so. Subsequently, the General Assembly enacted Article 20B, Ch. 153, of the General Statutes, which expressly confers such power upon the boards of county commissioners. County ordinances, adopted pursuant to this Act of the General Assembly, have been treated as valid legislative enactments in at least three decisions of this Court, in none of which was the authority of the General Assembly to delegate the power questioned. *Michael v. Guilford County,* 269 N.C. 515, 153 S.E. 2d 106; *Austin v. Brunnemer,* 266 N.C. 697, 147 S.E. 2d 182; *Durham County v. Addison,* 262 N.C. 280, 136 S.E. 2d 600.

[7, 8]   In *Harrington & Co. v. Renner, supra,* this Court recognized that "the General Assembly may delegate power to a municipal corporation to enact zoning ordinances in the exercise of police power of the State," and innumerable decisions of this Court have recognized such power in cities and towns by virtue of G.S. 160-172, et seq. The authority of the General Assembly to delegate to municipal corporations power to legislate concerning local problems, such as zoning, is an exception (established by custom in most, if not all, of the states) to the general rule that legislative powers, vested in the General Assembly by Art. II, § 1, of the Constitution of North Carolina, may not be delegated by it. 16 Am. Jur. 2d, Constitutional Law, §§ 250, 251. This Court has held that this exception to the doctrine of non-delegation is not limited to a delegation of such legislative authority to incorporated cities and towns, but extends, as to other types of local matters, to a like delegation to counties and other units established by the General Assembly for local government. *Efird v. Comrs. of Forsyth,* 219 N.C. 96, 12 S.E. 2d 889; *Tyrrell County v. Holloway,* 182 N.C. 64, 108 S.E. 337;

*Smith v. School Trustees,* 141 N.C. 143, 53 S.E. 524. See also, *State v. Smith,* 265 N.C. 173, 143 S.E. 2d 293. We perceive no basis for a distinction in this respect between municipal corporations and counties. We, therefore, hold that the General Assembly may, notwithstanding Art. II, § 1, of the Constitution of North Carolina, confer upon county boards of commissioners power to adopt zoning ordinances otherwise valid.

G.S. 153-266.10, "for the purpose of promoting health, safety, morals, or the general welfare," confers upon the board of county commissioners of any county the power "to regulate and restrict * * * the location and use of buildings, structures, and land for trade, industry, residence or other purposes, except farming." It further provides:

> "Such regulations may provide that a board of adjustment may determine and vary their application in harmony with their general purpose and intent and *in accordance with general or specific rules therein contained.* Such regulations may also provide that the board of adjustment or the board of county commissioners may issue special use permits or conditional use permits in the classes of cases or situations and *in accordance with the principles, conditions, safeguards, and procedures specified therein,* and may impose reasonable and appropriate conditions and safeguards upon such permits." (Emphasis added.)

G.S. 153-266.11 provides that the board of county commissioners for such purposes "may divide the county, or portions of it * * * into districts * * * and within such districts *it* may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures or land." (Emphasis added.)

G.S. 153-266.17 provides that if the board of commissioners exercises these powers, it "shall provide for the appointment of a board of adjustment" and that "the zoning ordinance may provide that the board of adjustment may permit special exceptions to the zoning regulations in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures *specified in the ordinance."* (Emphasis added.)

[9] These provisions are substantially the same as those in G.S. 160-172, et seq., conferring zoning powers upon municipal corporations. Under those statutes, this Court has held that the legislative body of the municipal corporation may not delegate to the municipal board of adjustment the power to zone; that is, the power originally vested in the General Assembly to legislate with reference to the

use which may be made of land and the structures which may be erected or located thereon. *In Re O'Neal,* 243 N.C. 714, 91 S.E. 2d 189; *James v. Sutton,* 229 N.C. 515, 50 S.E. 2d 300. In *Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E. 2d 128, it is said that G.S. 160-172, et seq., confer no legislative authority upon such municipal board of adjustment and thus such board "is not left free to make any determination whatever that appeals to its sense of justice." It follows that a county zoning ordinance may not delegate such legislative powers to the county board of adjustment.

Admittedly, the line dividing administrative powers which may be delegated from legislative powers which may not be delegated is not sharp and clearly defined. Consequently, decisions by this Court and by other courts as to its location have not been entirely harmonious. However, the governing principle, applicable to the delegation of powers by the General Assembly to State agencies, is also applicable to determine what powers may be conferred by a city or county upon its board of adjustment in a zoning ordinance. That principle has been thus stated in *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310:

> "Since legislation must often be adapted to complex conditions involving numerous details with which the Legislature cannot deal directly, the constitutional inhibition against delegating legislative authority does not deny to the Legislature the necessary flexibility of enabling it to lay down policies and establish standards, while leaving to designated governmental agencies and administrative boards the determination of facts to which the policy as declared by the Legislature shall apply.

> \* \* \*

> "Here we pause to note the distinction generally recognized between a delegation of the power to make a law, which necessarily includes a discretion as to what it shall be, and the conferring of authority or discretion as to its execution. The first may not be done, whereas the latter, if adequate guiding standards are laid down, is permissible under certain circumstances.

> \* \* \*

> "In short, while the Legislature may delegate the power to find facts or determine the existence or non-existence of a factual situation or condition on which the operation of a law is made to depend, or another agency of the government is to come into existence, it cannot vest in a subordinate agency the power to apply or withhold the application of the law in its

absolute or unguided discretion. 11 Am. Jur., Constitutional Law, Sec. 234. * * *

"[B]y the decided weight of authority, the rule is that 'if the statute requires or authorizes the court or other agency to pass upon questions of public policy involved, * * * there is an attempted delegation of legislative power and the statute is invalid.' 37 Am. Jur., Municipal Corporations, Sec. 8. * * *

"Manifestly, the power to determine whether the construction and operation of a toll road or toll bridge in any given instance will be 'in the public interest' is purely a legislative question to be resolved only in the exercise or under the direction of legislative powers of guidance and control."

When a statute, or ordinance, provides that a type of structure may not be erected in a specified area, except that such structure may be erected therein when certain conditions exist, one has a right, under the statute or ordinance, to erect such structure upon a showing that the specified conditions do exist. The legislative body may confer upon an administrative officer, or board, the authority to determine whether the specified conditions do, in fact, exist and may require a permit from such officer, or board, to be issued when he or it so determines, as a further condition precedent to the right to erect such structure in such area. Such permit is not one for a variance or departure from the statute or ordinance, but is the recognition of a right established by the statute or ordinance itself. Consequently, the delegation to such officer, or board, of authority to make such determination as to the existence or nonexistence of the specified conditions is not a delegation of the legislative power to make law.

Delegation to an administrative officer, or board, of authority to issue or refuse a permit for the erection of a specified type of structure in a given area, dependent upon whether such officer, or board, considers such structure in such area, under prevailing conditions, conducive to or adverse to the public interest or welfare is a different matter. Such delegation makes the determinative factor the opinion of such officer, or board, as to whether such structure in such area, under prevailing conditions, would be desirable or undesirable, beneficial to the community or harmful to it. This is a delegation of the power to make a different rule of law, case by case. This power may not be conferred by the legislative body upon an administrative officer or board.

Section 3-10 of the ordinance here in question is not an enumeration of conditions which, when met, bring into operation the excep-

tion; that is, confer upon the landowner the right to establish a mobile home park upon his land. This section is a list of regulations and specifications to which the park must conform if and when the permit to establish it is issued. The last of its provisions confers upon the Board of Adjustment authority to impose further requirements. This authority is, however, expressly limited to such further requirements as may reasonably be deemed necessary to accomplish the purposes of the ordinance, which purposes are, in turn, specifically fixed and declared in the ordinance. Consequently, this authorization does not set the Board of Adjustment free to roam at large within its own concept of what is best for the public. It is not, upon its face, an unlawful delegation of legislative power. We are not presently called upon to determine the validity of any requirement imposed by the Board of Adjustment under the authority of this section.

[10]    To ascertain the circumstances, under which the Board of Adjustment is to issue a permit to establish a mobile home park in the A-1 Agricultural District, we must turn to Section 6-13B of the ordinance. There we find the board is to grant such permit "in accordance with the principles, conditions, safeguards and procedures specified in this ordinance," or is to deny the permit "when not in harmony with the purpose and intent of this ordinance." Thus far, it is the ordinance, not the Board of Adjustment which determines the circumstances, the existence of which calls into play the provision for the exception, the board having authority to determine only the existence or absence of those circumstances. This determination is a matter of administration, not a delegation of the legislative power to change or add to the law as fixed in the ordinance.

[11]    Section 6-13B does not stop there, however. It goes on to provide that the Board of Adjustment shall grant no permit for the establishment in this district of a mobile home park unless the board receives a written application, conducts a public hearing after due notice and thereupon finds: (1) It is authorized, by the section of the ordinance designated in the application, to grant such permit — i.e., the circumstances specified by the ordinance itself exist; and (2) the granting of the permit "will not adversely affect the public interest" — i.e., in the opinion of the Board of Adjustment, the establishment of the proposed mobile home park will not be detrimental to the public good.

[12, 13]    The Court of Appeals apparently regarded the second of these required findings as limited to a finding that the proposed mobile home park will not violate conditions specified in or con-

flict with purposes declared in the ordinance itself. We do not so construe this provision of Section 6-13B. So construed, it would be surplusage, a mere repetition of the first required finding. When a statute or ordinance prescribes two or more prerequisites to official action, the presumption is that none of them is a mere repetition of the others. "All parts of the same statute dealing with the same subject are to be construed together as a whole, and every part thereof must be given effect if this can be done by any fair and reasonable intendment." Strong, North Carolina Index 2d, Statutes, § 5, and cases therein cited.

Section 7-1 of the ordinance provides that the provisions set out in the ordinance itself shall be interpreted "as the minimum requirements for the promotion of the public safety, health, convenience, prosperity, and general welfare." This is a further indication that Section 6-13B was intended to permit the Board of Adjustment to go further than the declared objectives of the ordinance in determining what will adversely affect the "public interest."

[11]    G.S. 153-266.17 provides that a county zoning ordinance may authorize the county board of adjustment to "permit special exceptions to the zoning regulations in classes of cases or situations and in accordance with the principles, conditions, safeguards and procedures *specified in the ordinance.*" (Emphasis added.) The provision of Section 6-13B of the Guilford County ordinance, requiring the Board of Adjustment to deny the permit if it finds the granting of it will adversely affect the public interest, is in excess of the authority which this statute permits to be so conferred upon the board.

So much of Section 6-13B of this ordinance as requires the Board of Adjustment to deny a permit for the establishment of a mobile home park in the A-1 Agricultural District unless it finds "that the granting of the special exception will not adversely affect the public interest" is, therefore, beyond the authority of the Board of County Commissioners to enact and so is invalid. This, however, does not invalidate the action of the board. It did not deny a permit. It granted one.

[14, 15]    There is nothing in the ordinance to suggest that the Board of County Commissioners intended that the invalidity of this requirement would make impossible the establishment anywhere in Guilford County of a mobile home park. On the contrary, Section 7-2 of the ordinance expressly provides that if "any section, sentence, clause, or phrase of this Ordinance be held invalid * * * such decision shall not affect the validity of the remaining portions

of this Ordinance." It is well settled that if valid provisions of a statute, or ordinance, are separable from invalid provisions therein, so that if the invalid provisions be stricken the remainder can stand alone, the valid portions will be given full effect if that was the legislative intent. *Fox v. Commissioners of Durham,* 244 N.C. 497, 94 S.E. 2d 482; *Power Co. v. Clay County,* 213 N.C. 698, 197 S.E. 603. "The invalidity of one part of a statute [or ordinance] does not nullify the remainder when the parts are separable and the invalid part was not the consideration or inducement for the Legislature [or board of county commissioners] to enact the part that is valid." *Bank v. Lacy,* 188 N.C. 25, 123 S.E. 475. When the statute, or ordinance, could be given effect had the invalid portion never been included, it will be given such effect if it is apparent that the legislative body, had it known of the invalidity of the one portion, would have enacted the remainder alone. *Commissioners v. Boring,* 175 N.C. 105, 111, 95 S.E. 43. Here, the legislative body, the Board of County Commissioners, has expressly declared in the ordinance that it would have done so. Therefore, the effect of the ordinance is to permit the Board of Adjustment to issue the permit in question without any finding as to the effect of it upon the public interest. It is interesting to note that this is precisely what the board did prior to the first order of the superior court, so there can be no question as to what the board would have done in this specific case had the ordinance not contained the invalid requirement.

It follows that the Court of Appeals was correct in affirming the judgment of the superior court which sustained the order of the Board of Adjustment granting the "special exception" permit.

Affirmed.